# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULLAH ALI SALEH GERAB ALSAAEI, *et al.*, | ) ) ) ) |
| *Petitioners,* | ) ) |
| v. | ) ) ) Civil Action No. 05-CV-2369 (RWR) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) ) |
| *Respondents.* | ) ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS PENDING RELATED APPEALS, AND IN SUPPORT OF PETITIONERS' CROSS-MOTIONS FOR: (A) THE IMMEDIATE ISSUANCE OF A WRIT OF *HABEAS CORPUS* PURSUANT TO 28 U.S.C. § 2243, OR, ALTERNATIVELY, AN ORDER TO SHOW CAUSE; (B) A PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE THIRTY DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER ALSAAEI FROM GUANTÁNAMO BAY, CUBA; AND (C) AN ORDER REQUIRING RESPONDENTS TO PRESERVE ALL EVIDENCE REGARDING PETITIONER ALSAAEI**

This memorandum of points and authorities is respectfully submitted on behalf of Petitioner Abdullah Ali Saleh Gerab Alsaaei ("Alsaaei"), acting through his Next Friend, Petitioner Ali Saleh Bin Gerab Al-Abdullah Own Saari (collectively "Petitioners"), in opposition to Respondents' Motion To Stay Proceedings Pending Related Appeals and in support of Petitioners' Cross-Motions for: (a) The Immediate Issuance of a Writ of *Habeas Corpus* Pursuant To 28 U.S.C. § 2243, Or, Alternatively, to Issue an Order to Show Cause; (b) A Preliminary Injunction Requiring Respondents To Provide Thirty Days' Advance Notice Of Any

Intended Removal Of Petitioner Alsaaei From Guantánamo Bay, Cuba ("Guantánamo"); And (c) An Order Requiring Respondents To Preserve All Evidence Regarding Petitioner Alsaaei.

Your Honor recently entered Orders in response to nearly identical motions by *habeas* petitioners in other Guantánamo cases.[1]  Based on the similarity of these matters to the instant case, and for the reasons stated below, Petitioners respectfully request that this Court apply the same reasoning and enter substantially similar Orders here, denying – at least in part – Respondents' motion for a stay, and granting Petitioners' cross-motions for the immediate issuance of a writ of *habeas corpus*, a preliminary injunction requiring thirty days' advance notice of any transfer of Petitioner Alsaaei, and the preservation of all evidence regarding Petitioner Alsaaei.

Alternatively, if this Court decides to enter a stay in this case pending the appeals in related cases, the Court should affirm Petitioners' ability to seek emergency relief in appropriate circumstances, require Respondents to produce a factual return, and condition the stay upon the other relief requested in Petitioners' cross-motions.[2]

---

[1]     *See, e.g., Al-Rubaish v. Bush*, No. 05-CV-1714 (RWR), slip op. (D.D.C. Dec. 14, 2005) (dkt. no. 16) (attached hereto as Ex. A); *El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. (July 18, 2005) (dkt. no. 149).; *Slahi  v. Bush*, No. 05-CV-881 (RWR), slip op. (D.D.C. July 18, 2005) (dkt. no. 10); *Ahmed v. Bush*, No. 05-CV-665 (RWR), slip op. (D.D.C. Jul. 8, 2005) (dkt. no. 16); *Slahi v. Bush*, No. 05-CV-881 (RWR), slip op. (D.D.C. June 16, 2005) (dkt. no. 5); *Adem v. Bush*, No. 05-723 (RWR), slip op. (D.D.C. June 6, 2005) (dkt. no. 13); *Al Daini v. Bush*, No. 05-CV-634 (RWR), slip op. (D.D.C. June 6, 2005) (dkt. no. 10); *El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. (D.D.C. Apr. 8, 2005) (dkt. no. 141); *Abdullah v. Bush*, No. 05-CV-23 (RWR), slip op. (D.D.C. Mar. 16, 2005) (dkt. no. 16).

[2]     Petitioners consent to entry of the Protective Order previously entered in other Guantánamo detainee cases.  *See* Stay Motion at Exs. A – C.  Because Respondents will not allow privileged communications between undersigned counsel and Mr. Alsaaei until the entry of the Protective Order, Petitioners respectfully request that this Order be entered at the Court's earliest convenience.  This consent and request is made without prejudice to Petitioners' right to seek modification of any particular terms of the Protective Order in the future.

## PROCEDURAL HISTORY

Petitioner Alsaaei is a citizen of the Kingdom of Saudi Arabia.  *See* Petition for Writ of *Habeas Corpus* (dkt. no. 1) ("Petition") at ¶ 3.  Upon information and belief, Petitioner Alsaaei is presently incarcerated at Guantánamo, where he is being held virtually *incommunicado* by Respondents.  *See* Petition at 1.  On December 12, 2005, Petitioners filed the Petition in this Court.  On December 22, 2005, Respondents filed a Motion to Stay Proceedings Pending Related Appeals (dkt. no. 2) ("Stay Motion").

Respondents have moved to stay the proceedings in this case pending resolution of all appeals in *Khalid v. Bush, Boumediene v. Bush,* Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Mar. 2, 2005), and *In re Guantánamo Detainee Cases*, No. 02- CV-0299 (GKK), et al., 355 F. Supp. 2d 443 (D.D.C. 2005), *appeal on petition for interlocutory appeal*, No. 05-5064 (D.C. Cir. Mar. 10, 2005).  *See* Stay Motion at 3-4.

Pursuant to LCvR 7(m), prior to filing the present opposition and cross-motions, Petitioners twice requested that Respondents' counsel consent to a motion for a conditional stay of these proceedings, consistent with Your Honor's prior Orders in other similar cases. Respondents' counsel refused.  *See* E-mail correspondence between Veronica Vela and Preeya Noronha (dated Dec. 22, 2005) and between Karen Abravanel and Preeya Noronha (dated Jan. 4 and 5, 2006) (attached hereto as Ex. B).

**ARGUMENT**

**I.    RESPONDENTS' MOTION FOR A STAY SHOULD BE DENIED**

Respondents have not met their burden under the law to justify a stay in these

proceedings.  A party seeking a stay of judicial proceedings "must make out a clear case of

hardship or inequity in being required to go forward, if there is even a fair possibility that the

stay for which he prays will work damage to someone else."  *Dellinger v. Mitchell*, 442 F.2d

782, 786 (D.C. Cir. 1971), *quoting Landis v. North American*, 299 U.S. 248, 255 (1936).  As

such, "[a]ny protracted halting or limitation of plaintiffs' right to maintain their case would

require not only a showing of 'need' in terms of protecting the other litigation involved but

would also require a balanced finding that such need overrides the injury to the parties being

stayed."  *Dellinger*, 442 F.2d at 787; *see also Cherokee Nation v. United States,* 124 F.3d 1413,

1416 (Fed. Cir. 1997).  And, at all times, "[t]he right to proceed in court should not be denied

except under the most extreme circumstances."  *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d.

Cir. 1971).  Thus, when a party would be significantly injured by a stay, as is the case here, the

movant must produce a significant showing of hardship if the case moves forward.

Respondents have made no such showing.  Respondents' main argument is that judicial

efficiency will be served by waiting to see if the Court of Appeals reverses Judge Green's

decision in *In re Guantanamo Detainee Cases*.  *See* Stay Motion at 13.  While judicial efficiency

is desirable, it cannot outweigh the harm to Petitioners.

It is an undeniable fact that Petitioner Alsaaei has been incarcerated virtually

*incommunicado* without charge, access to counsel or fundamental minimal due process

protections.  Furthermore, the United States government has recently released official documents

confirming reports from released detainees and news organizations that Guantánamo detainees

4

have been subject to systematic physical and mental abuse that can only be described as torture.[3]

A stay would subject Petitioner Alsaaei to continued lengthy indefinite detention under

admittedly abusive conditions without any access to the courts.

Additionally, Respondents' motion is wholly inconsistent with a long line of cases

emphasizing that *habeas* petitions must be handled expeditiously.  Writs of *habeas corpus* are

intended to afford a "swift and imperative remedy in all cases of illegal restraint or

confinement." *Fay v. Noia,* 372 U.S. 391, 400 (1963) (internal quotations omitted); *see also, e.g.*,

*Preiser v. Rodriguez*, 411 U.S. 475, 519 (1973) ("the federal habeas statute provides for a swift,

flexible, and summary determination"); *Carafas v. La Vallee*, 391 U.S. 234, 238 (1968) (*habeas*

review is designed "to provide an effective and speedy instrument by which judicial inquiry may

be had into the legality of the detention of a person"); *Stack v. Boyle*, 342 U.S. 1, 4 (1951)

("Relief in this type of case must be speedy if it is to be effective.").

Indeed, express statutory language compels prompt disposition of *habeas* petitions.  "A

court, justice or judge entertaining an application for a writ of habeas corpus *shall forthwith*

award the writ or issue an order directing the respondent to show cause why the writ should not

be granted. . . ." 28 U.S.C. § 2243 (emphasis added).  The statute plainly directs district courts to

"summarily hear and determine the facts, and dispose of [the *habeas* petition] as law and justice

require."  *Id.*  Specifically, the statute requires the court to hold a hearing "not more than five

days" after the return of the writ (which must itself occur within three days, absent good

cause).  *Id.*

---

[3]    These documents were released under a court order entered in litigation brought under the
Freedom of Information Act by civil rights, humanitarian and veterans' organizations.  *See
American Civil Liberties Union v. Department of Defense*, 339 F. Supp. 2d 501, 505 (S.D.N.Y.
2004).  The documents are available at http://www.aclu.org/torturefoia/.

## II.    THE COURT SHOULD ISSUE A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2243 OR REQUIRE RESPONDENTS TO SHOW CAUSE

Pursuant to 28 U.S.C. § 2243, Petitioners respectfully cross-move either for an order requiring Respondents to issue a writ of *habeas corpus*, or an order directing Respondents to show cause why a writ should not be issued. Respondents have had more than enough time to determine the grounds for Petitioner Alsaaei's detention, especially since Respondents have not been limited in their treatment of Petitioner Alsaaei by the rights afforded to virtually every other federal prisoner. For example: (1) Respondents have had unfettered access to Petitioner Alsaaei for the purpose of interrogation; (2) Respondents have had access to any documentary evidence obtained without the requirements of probable cause or warrant; and (3) Respondents have not been required to cooperate with or disclose findings to Petitioners' counsel. In short, Respondents have had complete control over Petitioner Alsaaei and every other potential witness and document.

Specifically, Respondents should be required to state the grounds for their continued detention of Petitioner Alsaaei, which is contained in his factual return, a compilation of material from his review before the Combatant Status Review Tribunal ("CSRT"). Access to Petitioner Alsaaei's factual return is critical to counsel's ability to represent Petitioners properly and to present their *habeas* petition to the Court. To provide Petitioners with meaningful advice, Petitioners' counsel needs, and is entitled to know without delay, the evidence which allegedly supports the extended detention of Petitioner Alsaaei in a United States military facility halfway around the world from his home. Accordingly, to minimize the prejudice accruing to Petitioners, this Court should require Respondents to provide counsel with Petitioner Alsaaei's full factual return within twenty days of entry of the Protective Order. *See* 28 U.S.C. § 2243 (establishing twenty-day maximum limit).

6

A.    **Petitioner Alsaaei's Factual Return Is Critical To Counsel's Ability To Effectively Represent Petitioners**

Counsel cannot effectively represent Petitioners without access to the information provided in Petitioner Alsaeei's factual return. "Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199-200 (D.D.C. 2005). Respondents control all information regarding, *inter alia,* Petitioner Alsaaei's current state of health, the circumstances under which he was arrested and came to be detained at Guantánamo Bay, the length of his detention, or even whether he has officially been declared an "enemy combatant."[4]

B.    **The Burden On Respondents Is Minimal**

Despite Respondents' generic assertions to the contrary, *see* Stay Motion at 15, producing Petitioner Alsaaei's factual return creates only a minimal burden on Respondents. In every Guantánamo detainee case where Respondents have been ordered to produce a factual return, the return has consisted of the record of proceedings before the detainee's CSRT. As of July 2005, a CSRT has been completed for every prisoner in United States custody at Guantánamo. *See* Jennifer K. Elsea, *CRS Report for Congress: Detainees at Guantanamo Bay* at 2 (July 20, 2005), *available at* http://www.fas.org/sgp/crs/natsec/RS22173.pdf.

In fact, a sampling of unclassified CSRT files for about 60 Guantánamo detainees can be viewed on the Internet as a result of a successful Associated Press Freedom of Information Act case. *See* Associated Press, Associated Press – Washington in Depth, *at* http://wid.ap.org/

---

[4]    Petitioners acknowledge Respondents' assertion that they are currently unable to locate Petitioner Alsaaei at Guantánamo. Upon information and belief, Petitioners assert that this problem is temporary and most likely stems from the difficulty of transliterating Petitioner Alsaaei's name from Arabic to English. Counsel for Petitioners has offered to assist Respondents in obtaining additional information that will help locate Petitioner Alsaaei, and expects that this problem will soon be resolved.

documents/detainees/list.html.  A cursory review of any of these files shows that the United States government appears to maintain organized factual files that can be quickly and easily produced.  It makes no sense that such files can be produced to the Associated Press, but not to Petitioners' counsel.

### C.    In Similar Cases, This Court Has Ordered Respondents To File A Factual Return

This Court has consistently ordered Respondents to show cause and file a factual return, often ruling *sua sponte*.  *See, e.g., Al-Rubaish v. Bush*, No. 05-CV-1714 (RWR), slip op. (D.D.C. Nov. 1, 2005) (dkt. no. 2); *Hamoud v. Bush*, No. 05-CV-1894 (RWR), slip op. (D.D.C. Nov. 1, 2005) (dkt. no. 2); *Algatele v. Bush*, No. 05-CV-1669 (RWR), slip op. (D.D.C. Nov. 1, 2005) (dkt. no. 2).  In these orders, this Court has given Respondents up to forty-five days in which to file and serve the petitioner's factual return, which is in fact more than twice time allotted by the statutory provision.  *See id.; see also* 28 U.S.C. § 2243 ("The writ, or order to show cause . . . shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.").

Respondents now ask this Court to relieve them of their statutory duty to submit factual returns to counsel for Petitioner Alsaaei, or in the alternative to give them "10 to 12 weeks" to file factual returns in the eight cases cited in their Motion.  Stay Motion at 14-16.   Yet this Court recently denied just such a "request for relief from any obligation to file a factual return," which was filed in conjunction with Respondents' motion to stay proceedings in *Al-Rubaish v. Bush*.  *See Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 7-8 (D.D.C. Dec. 14, 2005) (dkt. no. 16) (Ex. A).  Petitioner Alsaaei requests that this Court order Respondents to file a factual return within twenty, or at the latest forty-five days, in order to help begin to address the interests of Alsaaei and to comply with the provisions of 28 U.S.C. § 2243.

**D.     In The Event That This Court Enters A Stay In This Case, The Stay Should Be Conditioned On The Requirement Of A Factual Return**

If this Court does grant the Respondents' request for a stay of proceedings in this case, requiring a factual return is especially appropriate.  As noted above, in considering a request for stay, the Court must balance the respective interests of the parties and the relative harm the stay would inflict.  "A Court may, in appropriate situations, specify protective conditions in balancing the hardship necessarily imposed on the party whose suit or execution of judgment has been stayed pending appeal."  *Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 4 (D.D.C. Dec. 14, 2005) (dkt. no. 16) (Ex. A).

In fact, where the condition imposed on the proponent of the stay is "'neither heavy nor unexpected,'" imposing a protective condition is well within a court's discretion.  *Cooks v. Fowler*, 459 F.2d 1269, 1273 (D.C. Cir. 1971) (*quoting Bell v. Tsintolas Realty Co.,* 430 F.2d 474, 482 (D.C. Cir. 1970) ("[w]e have little doubt that [a court] may fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation")).

Accordingly, this Court should:

> guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. Landis v. North American Co., 299 U.S. 248, 256 (1936). Coextensive with a district court's inherent power to stay proceedings is the power to craft a stay that balances the hardships to the parties. Id. at 255 (noting concern regarding the stay causing "even a fair possibility . . . [of] damage to some one else."); see also Clinton v. Jones, 520 U.S. 681, 707 (1997) (noting that "burdens [to the parties] are appropriate matters for the District Court to evaluate in its management of the case.").

*Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 5 (D.D.C. Dec. 14, 2005) (dkt. no. 16) (Ex. A) (quoting *Al-Oshan v. Bush*, No. 05-CV-520 (RMU) (D.D.C. Mar. 31, 2005) (dkt. no. 12)).

III.    **THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE PETITIONERS' COUNSEL AND THE COURT WITH THIRTY DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER ALSAAEI FROM GUANTÁNAMO**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioners respectfully cross-move for a preliminary injunction requiring Respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, to provide this Court and Petitioners or any counsel representing them with thirty days' advance written notice of any transfer or removal of Petitioner Alsaaei from United States custody at Guantánamo. Upon information and belief, Petitioner Alsaaei may be at risk of being rendered, returned or transferred without lawful process to a country that permits indefinite detention and/or engages in torture or abuse during interrogation. *See* Petition ¶¶ 42 – 48. Petitioners request the thirty days' advance notice to enable their counsel to contest any such removal from Guantánamo and to preserve the jurisdiction of this Court in this matter.

This Court has inherent power under the All Writs Act, 28 U.S.C. § 1651(a), "to issue injunctions to protect its jurisdiction." *SEC v. Vision Comms., Inc.*, 74 F.3d 287, 297 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioners' request for the thirty days' advance notice meets the most fundamental purpose of preliminary injunctive relief: "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 65.20 (4th ed. 2004).

A.    **Injunctive Relief Is Clearly Warranted**

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Petitioner Alsaaei will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner

10

Alsaaei is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing the United States government from transferring individuals to foreign countries for detention and torture. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998). The balance of hardships tips decidedly towards Petitioner Alsaaei, who has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Al-Joudi v. Bush*, No. 05-CV-301 (GK), slip op. at 7 (D.D.C. Apr. 4, 2005) (dkt. no. 20) (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

## 1.     *Petitioner Alsaaei faces irreparable harm*

Recent news reports indicate that the United States government is contemplating the imminent transfer of a large number of Saudi detainees, such as Petitioner Alsaaei, to their home country. *See* Petition ¶ 47. As reported by the United States Department of State, Saudi Arabia has a documented record of human rights violations, including *incommunicado* detention and abuse of prisoners. *See* Petition ¶ 46. Therefore, if Petitioner Alsaaei is transferred to the custody of the Saudi government, he stands to suffer immeasurable and irreparable physical harm. *See Al-Joudi v. Bush*, No. 05-CV-301 (GK), slip op. at 8-9 (D.D.C. Apr. 4, 2005) (dkt. no. 20) (finding that four Saudi petitioners detained at Guantánamo "face the possibility of transfer to a country where they might be tortured or indefinitely confined, which undeniably would constitute irreparable harm."). Furthermore, such transfer would also circumvent Petitioners' right to adjudicate in this Court the legality of Petitioner Alsaaei's detention. *See El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. at 4 (D.D.C. Apr. 8, 2005) (dkt. no. 141) ("The outcome

petitioners fear, if realized, would improperly subvert the court's ability to adjudicate these actions on their merits.").

### 2. *No harm will be suffered by Respondents*

Judges of this Court have found that the requested thirty days' advance notice is "a concrete, narrow, and minimally burdensome remedy." *Al-Joudi v. Bush*, No. 05-CV-301 (GK), slip op. at 15 (D.D.C. Apr. 4, 2005) (dkt. no. 20). Indeed, "[t]he requested relief does not constitute even a minimal burden on the Government; at most, it would require the Government to file a few pieces of paper. Such a minimal consequence does not outweigh the imminent threats of indefinite detention, potential torture, and the elimination of [petitioners'] claims." *Id.* at 14.

### 3. *Petitioners have raised questions as to the merits that are fair grounds for litigation*

Petitioners are likely to succeed on the merits of their claims. First, Petitioners have properly invoked the *habeas* jurisdiction of this Court pursuant to *Rasul v. Bush*, 542 U.S. 466, 483 (2004). Second, Petitioners have shown a likelihood that Petitioner Alsaaei may be transferred. *See* Petition ¶¶ 42-48. Finally, Judge Green of this Court has ruled that detainees at Guantánamo have stated valid claims under the Due Process Clause and the Third Geneva Convention. *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 481 (D.D.C. 2005).

### 4. *The injunctive relief would serve the public interest*

Public policy favors the requirement of thirty days' advance notice. Petitioners claim Due Process rights that would be protected by such notice, and "it is always in the public interest to prevent the violation of a party's constitutional rights." *See Abdah v. Bush*, No. 04-CV-1254 (HHK), slip op. at 12 (D.D.C. Mar. 29, 2005) (dkt. no. 146) (citing *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

**B.     In Similar Cases, This Court Has Ordered Respondents To Provide Thirty Days' Advance Notice Of Any Intended Removal**

This Court has previously granted nearly identical motions brought by petitioners who are similarly-situated to Petitioner Alsaaei.  In so ruling, this Court found that these similarly-situated petitioners had reason to fear that they would be transferred to a country where they would be tortured and/or detained indefinitely without due process of law.  For example, this Court stated in *El-Banna v. Bush*:

> Petitioners' fears do not appear fanciful. . . . respondents concede that they have transferred custody of many Guantanamo detainees to foreign sovereigns and assert that such transfer divests this court of jurisdiction over pending habeas corpus petitions. . . .

*El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. at 4 (D.D.C. Apr. 8, 2005) (dkt. no. 141). Petitioners respectfully request that this Court apply the same reasoning in the instant case, and issue the same order requiring Respondents to provide thirty days' advance notice of any transfer of Petitioner Alsaaei.  *See, e.g., Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 8 (D.D.C. Dec. 14, 2005) (dkt. no. 16) (Ex. A) (ordering that "Respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, shall provide this court and petitioners or any counsel representing them with thirty days' advance written notice of any transfer or removal of the detained petitioner from United States custody at Guantanamo Bay."); *Slahi v. Bush*, No. 05-CV-881 (RWR), slip op. at 4 (D.D.C. June 16, 2005) (dkt. no. 5) (same); *Adem v. Bush*, No. 05-CV-723 (RWR), slip op. at 4 (D.D.C. June 6, 2005) (dkt. no. 13) (same); *Al Daini v. Bush*, No. 05-CV-634 (RWR), slip op. at 4 (D.D.C. June 6, 2005) (dkt. no. 10) (same).

**C.    In The Event That This Court Enters A Stay In This Case, The Stay Should Be Conditioned On The Requirement Of Thirty Days' Advance Notice**

If this Court does grant the Respondents' request for a stay of proceedings in this case, requiring Respondents to provide thirty days' advance notice is especially appropriate.   As this Court found in *El-Banna*, any transfer of Petitioner Alsaaei "would nullify the stay's purpose of preserving the status quo between the parties." *El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. at 4 (D.D.C. Apr. 8, 2005) (dkt. no. 141).

**IV.    THE COURT SHOULD ORDER RESPONDENTS TO PRESERVE AND MAINTAIN ALL EVIDENCE, DOCUMENTS, AND INFORMATION, WITHOUT LIMITATION, NOW OR EVER IN RESPONDENTS' POSSESSION, CUSTODY OR CONTROL, REGARDING PETITIONER ALSAAEI**

Pursuant to this Court's inherent powers to order the preservation of evidence, *see Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133, 135 (Fed. Cl. 2004), Petitioners respectfully cross-move for an order requiring Respondents to preserve and maintain all evidence, documents, and information, without limitation, now or ever in Respondents' possession, regarding Petitioner Alsaaei. [5]  A preservation order is critical to the fair adjudication of this case, particularly because Respondents have sought and received stays of the prosecution of related proceedings and because Respondents refuse to provide all relevant evidence and information regarding Petitioner Alsaaei.  Petitioners and their counsel have no records; Respondents are in possession of all records relating to Petitioner Alsaaei.

As this Court has noted, "the discovery provisions of the Federal Rules of Civil Procedure do not automatically apply in whole to federal habeas corpus proceedings." *Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 5 (D.D.C. Dec. 14, 2005) (dkt. no. 16) (Ex. A).  "Therefore, the preservation obligations that flow to a litigant from the federal discovery

---

[5]      As used in this cross-motion, "documents" has the full meaning given it under Fed. R. Civ. P. 34.

rules cannot be presumed to apply to habeas litigants absent some express application by a court. Accordingly, a preservation order in habeas proceedings, particularly in proceedings such as these where there has been no full disclosure of facts on the public record that justify the challenged detention, is not superfluous or unnecessary." *Id.* at 5-6.

This Court is empowered to enter a preservation order when circumstances warrant it. *See Pueblo of Laguna*, 60 Fed. Cl. at 138 n.8 (stating that a movant for a preservation order need only satisfy the standard for ordering its opponent to produce a list of witnesses, not the higher standard of a preliminary injunction). *Pueblo of Laguna* sets forth a two-part test to determine when such an order should issue: the party seeking a preservation order must "demonstrate that it is necessary and not unduly burdensome." *Id.* at 138. As described below, both prongs of this test are easily met in the present case.

### A.    A Preservation Order Is Necessary In This Case

Documents and records recently released by the United States military and government raise legitimate concerns that Respondents are not properly maintaining sensitive evidence they now possess about torture, mistreatment, and abuse of Petitioner Alsaaei and other detainees at Guantánamo. For example, a September 30, 2005 Department of Defense investigative report indicates that mismanagement and problems with leadership may have resulted in serious mishandling of prosecutions at Guantánamo. *See* Nicole Gaudiano, *Investigation clears Gitmo prosecutors; But report expresses concern about case preparation*, Air Force Times, Oct. 17, 2005, at 10. This report includes a statement by the Air Force's top military attorney, Major General Jack Rives, that "it was clear that the [Office of the Chief Prosecutor] had first drafted charges and now they were trying to find the evidence to support the charges." *Id.* Similarly, the *New York Times* has reported that the military's own investigations into detainee abuse were harmed because "crucial witnesses were not interviewed, documents disappeared, and at least a

few pieces of evidence were mishandled." *See* Tim Golden, *Army Faltered in Investigating Detainee Abuse,* N.Y. Times, May 22, 2005, at A1.

In fact, documents recently produced by the Federal Bureau of Investigation indicate that individuals in the United States government and military may be engaged in a concerted effort to "cover-up" physical abuses of detainees held in connection with the global war on terror. Specifically, an "Urgent Report" authored in June 2004 confirms that unnamed individuals "observed numerous physical abuse incidents of Iraqi civilian detainees conducted in Iraq," including "strangulation, beatings, placement of lit cigarettes into the detainees['] ear openings, and unauthorized interrogations." Urgent Report from Sacramento Division to The Director at 2 (June 25, 2004) (attached hereto as Ex. C). The document further reports that unnamed individuals "were engaged in a cover-up of these abuses." *Id.*

**B.    Compliance With A Preservation Order Is Not Unduly Burdensome To Respondents**

As this Court recently found, "[t]he requested order imposes no greater obligation on respondents than the federal discovery rules' preservation obligations impose on a litigant in a typical civil lawsuit." *Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 7 (D.D.C. Dec. 14, 2005) (dkt. no. 16) (Ex. A). Indeed, this Court has suggested that Respondents' opposition to preservation orders in the Guantánamo detainee cases actually "may underscore the need for a preservation order." *El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. at 6 (Jul. 18, 2005) (dkt. no. 149).

Any loss of evidence regarding Petitioner Alsaaei's detention and possible mistreatment or torture could irreparably harm Petitioners by depriving them of proof that Petitioner Alsaaei's detention is unlawful. In contrast, an order requiring the preservation of such evidence is a

narrow remedy that would impose no burden upon Respondents.  Here, as in other Guantánamo

detainee cases:

> The preservation order petitioners seek is tailored to preserve
> "documents and information in . . . [respondents'] possession" that
> may be "relevant to litigation or potential litigation or are
> reasonably calculated to lead to the discovery of admissible
> evidence." Wm. T. Thompson Co. v. General Nutrition Corp., 593
> F. Supp. 1443, 1455 (C.D. Cal. 1984).  Documents reflecting
> treatment of detainees – whether statements of official policy,
> cumulative evidence of specific practices, or something else – may
> be probative of the treatment of petitioners or may lead to other
> probative evidence.

*Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 7 (D.D.C. Dec. 14, 2005) (dkt. no. 16)

(Ex. A).

### C.    This Court Has Issued Preservation Orders In Similar Cases

This Court has previously issued identical preservation Orders under nearly identical

circumstances.  For example, ruling in a similar case, this Court recently ordered Respondents to

"preserve and maintain all evidence, documents and information, without limitation, now or ever

in respondents' possession, custody, or control, regarding the detained petitioner in this case."

*Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 8-9 (D.D.C. Dec. 14, 2005) (dkt. no. 16)

(Ex. A).   Furthermore, this Court has consistently endorsed the importance of ordering

Respondents to preserve all evidence concerning petitioners detained at Guantánamo.  *See, e.g.,*

*El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. at 6 (Jul. 18, 2005) (dkt. no. 149).  In fact,

this Court has even expressed its willingness to enter a general preservation order requiring

Respondents to preserve all materials regarding the general treatment of Guantánamo detainees.

*See id.* at 6-7.   Petitioners respectfully request that this Court apply the same reasoning here, and

issue the same order requiring the preservation of evidence.

> **D.    In The Event That This Court Enters A Stay In This Case, The Stay Should Be Conditioned On The Entry Of A Preservation Order**

If this Court does grant the Respondents' request for a stay of proceedings in this case, requiring Respondents to preserve all evidence regarding Petitioner Alsaaei is especially appropriate.  Complying with this requirement would be neither burdensome nor unexpected, and such preservation is necessary both to maintain the status quo and to allow Petitioners to obtain evidence through discovery so as to determine the basis for Petitioner Alsaaei's detention. *See, e.g., Al-Rubaish v. Bush,* No. 05-CV-1714 (RWR), slip op. at 5-7 (D.D.C. Dec. 14, 2005) (dkt. no. 16) (Ex. A).

## CONCLUSION

For the reasons stated above, Petitioners respectfully request that the Court deny Respondents' motion to stay these proceedings, and grant Petitioners' cross-motions for: (a) the immediate issuance of a writ of *habeas corpus* pursuant to 28 U.S.C. § 2243, or, alternatively, an order to show cause; (b) a preliminary injunction requiring Respondents to provide thirty days' advance notice of any intended removal of Petitioner Alsaaei from Guantánamo; and (c) an order requiring Respondents to preserve all evidence regarding Petitioner Alsaaei.

Alternatively, should this Court decide to grant Respondents' request for a stay of these proceedings, Petitioners respectfully request that the stay be conditioned upon the relief requested in Petitioners' cross-motions.  To that end, based on previous Orders that Your Honor has entered in similar cases, Petitioners hereby move this Court, and respectfully request that the Court condition the stay as follows:

1.    Petitioners will have the ability to seek emergency relief from this Court in appropriate circumstances;

2.      Respondents, their agents, servants, employees, confederates, and others will be enjoined from transferring or removing Petitioner Alsaaei from U.S. custody at Guantánamo unless this Court and Petitioners' counsel receive thirty days' advance notice of such transfer or removal;

3.      Respondents will be required to file a factual return relating to Petitioner Alsaaei within twenty days;

4.      Respondents will be required to preserve and maintain all evidence, documents, and information, without limitation, now or ever in Respondents' possession, custody or control regarding Petitioner Alsaaei.

Date: January 6, 2006

Respectfully Submitted,

SIMPSON THACHER & BARTLETT LLP

/s/ Paul C. Curnin
Mark J. Stein
Paul C. Curnin
Veronica Vela
Karen E. Abravanel
Nathaniel I. Kolodny
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502

Attorneys for Petitioner Abdullah Ali Saleh Gerab Alsaaei

*Of Counsel:*

Barbara J. Olshansky (NY0057)
Tina Monshipour Foster (TF5556)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499