PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABDULLAH ALI SALEH GERAB ALSAAEI, *et al.*, <br><br> *Petitioners,* <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> *Respondents.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 05-CV-2369 (RWR) |

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION
TO EXAMINE PRIVILEGED COMMUNICATIONS SEIZED
WITHOUT COURT APPROVAL OR NOTICE TO COUNSEL**

Having already seized 1,100 pounds of mail from the detainees at Guantánamo Bay, Cuba ("Guantánamo"), including materials admittedly protected by the attorney-client privilege, Respondents now move the Court for an order ratifying their seizure and establishing an arrangement for reviewing the privileged materials.[1]  Respondents' motion should be denied. The government's seizure and review of privileged documents constitute a plain violation of this Court's orders, as well as the fundamental principles of the attorney-client privilege.

---

[1] Respondents argue in a footnote that the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 (the "DTA") divested the Court of jurisdiction over all of the Guantánamo *habeas* cases.  *See* Mot. at 2 n.3.  The Supreme Court, however, has held that "§ 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment."  *Hamdan v. Rumsfeld*, -- S. Ct. --, No. 05-184, slip op. at 20 n. 15 (June 29, 2006).  This Court found that the *Hamdan* decision resolved the parties' dispute over the impact of the DTA because "the [Supreme] Court made clear that this court retains jurisdiction over this *habeas corpus* petition."  *Hamoud v. Bush*, No. 05-1894 (D.D.C. July 5, 2006) (RWR), Mem. Order at 1 n.1 (dkt. no. 23).  Indeed, by filing their motion in this Court, Respondents implicitly acknowledge the Court's continuing jurisdiction over the instant case.

Furthermore, Respondents have provided no basis for permitting the government to read any materials, let alone privileged attorney-client communications, belonging to Petitioner Abdullah Ali Saleh Gerab Alsaaei.

## ARGUMENT

This Court has ruled—over Respondents' objections—that detainees at Guantánamo have a right to representation by and access to counsel. *See Al Odah v. U.S.*, 346 F. Supp.2d 1, 8 (D.D.C. 2004) ("The Supreme Court has found that Petitioners have the right to bring their claims before this Court, and this Court finds that Petitioners cannot be expected to exercise this right without the assistance of counsel."); *see also Adem v. Bush*, 425 F. Supp. 2d 7, 12 (D.D.C 2006) (describing Respondents' efforts to deny Guantánamo detainees' access to counsel even after the Supreme Court found that detainees could bring *habeas* challenges in district court). Furthermore, this Court has gone to great lengths to *protect* the attorney-client privilege by creating access procedures that specifically protect the confidentiality of attorney-client communications. *See generally In re Guantánamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004) ("Protective Order"). To that end, the Court rejected a previous proposal by Respondents to monitor all written communications between detainees and their counsel, finding that such procedures would "inappropriately burden" the attorney-client relationship and that "national security considerations can be addressed in other ways." *Al Odah v. United States*, 346 F. Supp. 2d 1, 8-9 (D.D.C. 2004).

To give meaning to the attorney-client privilege in the instant case, the Court entered the Protective Order and the accompanying Access Procedures (dkt. no. 14), which established clear rules for confidential in-person meetings and written communications between Petitioner Alsaaei and undersigned counsel. The government's seizure of materials protected by the attorney-client

privilege plainly violates the terms of the Protective Order. Indeed, the government does not even attempt to justify its actions under the Protective Order, but rather admits that the seized materials "will likely include some number of attorney-client communications potentially subject to attorney-client privilege." Mot. at 9.

Respondents' motion attempts to justify the government's seizure of attorney-client materials by alleging that notes found in the cells of the three deceased detainees suggest the illicit use of privileged materials for communications among detainees. This proffered justification for seizing and reviewing privileged communications may be valid, or it may be mere pretext for collecting "prisoner intelligence" and undermining the attorney-client relationship.[2] Either way, it does not justify seizing and examining privileged communications without the Court's approval or supervision and without prior notice to undersigned counsel.[3] Detained individuals retain the attorney-client privilege, notwithstanding the diminished expectation of privacy in a jail cell. *See United States v. Defonte,* 441 F.3d 92, 94 (2d Cir. 2006). Furthermore, the existence of robust protections for attorney-client communications makes it reasonable for attorneys to expect privacy in their communications with detained clients—even when the clients are detained in connection with the federal government's investigation of terrorist attacks. *See Lonegan v. Hasty*, -- F. Supp.2d --, No. 04-2743, 2006 WL 1707258 at **13, 18 (E.D.N.Y. June 22, 2006).

---

[2] The seizure of legal papers inevitably chills the exchange of communications between clients and their attorneys, particularly when documents can be seized without notice to the attorneys or the court. Petitioner Alsaaei is particularly vulnerable to this chilling effect because he has been detained virtually *incommunicado* and repeatedly interrogated for several years. *See* Petition for Writ of Habeas Corpus ¶¶ 27, 28 (dkt. no. 1).

[3] Respondents waited nearly a month after seizing these documents before disclosing their actions to the Court and undersigned counsel.

The government's unilateral abrogation of the attorney-client privilege is unlawful. Abrogation of the attorney-client privilege in any context requires the government to make a specific, *individualized* showing that there is sufficiently compelling justification for invading the privilege. *See In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997). For example, where the government invokes the crime-fraud exception to the attorney-client privilege, it bears the burden of making an adequate showing that the exception applies—i.e., that *that* client "made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act," and actually carried out that act. *Id.* ("As the party seeking to overcome the privilege, the government had the burden of showing that the crime-fraud exception applied.").

Here, Respondents present no evidence that Petitioner Alsaaei has "misused" his attorney-client materials. Respondents' description of the few allegedly suspicious documents, found to have been written by or in the possession of one of the deceased detainees, offers scant support for the argument that any detainees at Guantánamo are misusing attorney-client materials—and there is no evidence pointing to Petitioner Alsaaei in particular. *See* Mot. Ex. B, Kisthardt Decl. ¶¶ 3, 5. Respondents have not alleged that any materials were found in Petitioner Alsaaei's possession, either on his person or in his cell; that Petitioner Alsaaei's cell is located near the cells where the documents were found; nor that Petitioner Alsaaei had any personal relationship with the deceased detainees. Indeed, Respondents do not even mention Petitioner Alsaaei by name. Since the attorney-client privilege belongs individually to Petitioner Alsaaei, allegations that other detainees may have misused such privilege cannot justify the seizure of Petitioner Alsaaei's materials. *See In re Sealed Case*, 107 F.3d at 49 ("The privilege is the client's, and it is the client's fraudulent or criminal intent that matters. A third party's bad intent cannot remove the protection of the privilege.").

4

Respondents also suggest that "possibly others"—*i.e.*, a category of non-prisoners, which presumably includes attorneys—may have participated in a "manifest abuse of the legal mail system." *See* Mot. at 18. Yet Respondents do not, and cannot, point to a scintilla of evidence showing that undersigned counsel have provided Petitioner Alsaaei with materials prohibited under the Protective Order, or have misused the protections of the attorney-client privilege in any other way. Accordingly, Respondents' motion overreaches and their accusations are meritless.

## CONCLUSION

For the preceding reasons, Respondents' motion should be denied. Any papers seized from Petitioner Alsaaei should be ordered returned immediately.

Dated: New York, New York
July 21, 2006

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

/s/ Paul C. Curnin
Paul C. Curnin
Veronica Vela
Karen E. Abravanel
Nathaniel I. Kolodny
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502

Attorneys for Petitioners

*Of Counsel:*

Barbara Olshansky (NY0057)
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

5