**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Al Shihry v. Bush | ) | Case No. 05-CV-0490 (PLF) |
| | ) | |
| Akhouzada v. Bush | ) | Case No. 06-CV-1685 (JDB) |
| | ) | |
| Al Anazi v. Bush | ) | Case No. 05-CV-0345 (JDB) |
| | ) | |
| Al Rubaish v. Bush | ) | Case No. 05-CV-1714 (RWR) |
| | ) | |
| Ali Al Jayfi v. Bush | ) | Case No. 05-CV-2104 (RBW) |
| | ) | |
| Alsaaei v. Bush | ) | Case No. 05-CV-2369 (RWR) |
| | ) | |
| Errachidi v. Bush | ) | Case No. 05-CV-0640 (EGS) |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**AND RESPONSE IN CONNECTION WITH RELATED MOTIONS**

**PRELIMINARY STATEMENT**

As explained in Respondents' Motion to Dismiss, the law of this circuit, announced recently in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. denied*, 127 S. Ct. 1478 (Apr. 2, 2007), requires dismissal of this case. See Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600. Petitioners in these cases oppose Respondents' motion to dismiss, variously contending that the Court of Appeals' decision in *Boumediene* is not truly final, that "abeying" these actions is more appropriate than dismissing them, that transfer to the Court of Appeals (which could never have had jurisdiction over these cases) is appropriate, or that for other reasons the direction that the Court of Appeals provided in *Boumediene* to dismiss these cases should not be followed. Petitioners' proposed course of action is untenable and without basis in law.

## ARGUMENT

### I.     THE LAW OF THE CIRCUIT REQUIRES DISMISSAL OF THESE CASES

The decision of the Court of Appeals for the District of Columbia Circuit in *Boumediene* requires dismissal of these habeas cases. *See Boumediene*, 476 F.3d at 986, 994.  The decision in *Boumediene* is final and is the law of the circuit. *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring) ("[o]nce [an] opinion [is] released it [becomes] the law of this circuit").  Indeed, the Court of Appeals has recognized as much by dismissing for lack of jurisdiction other detainees' habeas cases, pursuant to *Boumediene. See Kiyemba v. Bush*, Nos. 05-5487, et al. (D.C. Cir. Order of Mar. 22, 2007) (attached as Exhibit D to Resps' Mot. to Dismiss); *Paracha v. Bush*, Nos. 05-5194, et al. (D.C. Cir. Order of Apr. 9, 2007) (attached as Exhibit E to Resps' Mot. to Dismiss); *Zalita v. Bush*, No. 07-5129 (D.C. Cir. Order of Apr. 25, 2007).  And the Supreme Court's refusal to review *Boumediene* underscores the fact that that decision is final and binding.  See 127 S. Ct. 1478; *see also Boumediene v. Bush*, ___ S.Ct. ___, 2007 WL 1225368 (2007) (denying petitioners' motion for extension of time in which to file a petition for rehearing of the order denying certiorari and denying petitioners' motion for suspension of the order denying certiorari); *Hamdan v. Gates*, No. 06-1169, ___ S. Ct. ___ (Apr. 30, 2007) (denying cert.).  Petitioners, therefore, have no legal grounds on which to postpone dismissal of their habeas cases.

Petitioners argue that it is inappropriate to rely on Judge Henderson's concurrence in *Ayuda*, in which Judge Henderson stated that "[o]nce [an] opinion [is] released it [becomes] the law of this circuit." 919 F.2d at 154.  But Judge Henderson's statement was merely an express statement of the reasoning inherent in the majority opinion, which held that because the Court of

Appeals had issued a prior opinion deciding that the district court lacked jurisdiction, a later

order of the district court should be stayed based on that earlier Court of Appeal opinion, even

though (as here) the mandate had not yet issued from that earlier opinion.  Thus, *Ayuda* – and

not just Judge Henderson's concurrence – stands for the proposition that a decision of the Court

of Appeals is binding in the Circuit regardless of whether the mandate has issued.  As the Court

of Appeals for this Circuit put the matter in another case,

> While law-of-the-case doctrine is a prudential creation of the courts, the
> law-of-the-circuit doctrine is derived from legislation and from the structure of the
> federal courts of appeals.  Courts of appeals sit in panels, or divisions, of "not more than
> three judges" pursuant to the authority granted in 28 U.S.C. § 46(c).  The "decision of a
> division" is "the decision of the court." Revision Notes to 28 U.S.C. § 46 (citing *Textile
> Mills Sec. Corp. v. Commissioner*, 314 U.S. 326 (1941)); *see Critical Mass Energy
> Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 876 (D.C.Cir.1992) (in banc), *cert.
> denied*, 507 U.S. 984 (1993).  Were matters otherwise, the finality of our appellate
> decisions would yield to constant conflicts within the circuit.  *Textile Mills Sec. Corp.*,
> 314 U.S. at 335.

*LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (*en banc*).  If, as the court said in that

case, "[o]ne three-judge panel . . . does not have the authority to overrule another three-judge

panel of the court," *id.*, this Court certainly lacks the authority to disregard *Boumediene*.

Many of the petitioners try to evade the application of *Boumediene* by relying on a

wholesale misreading of *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998).

Petitioners argue that *Steel Co.* somehow means that the presence of an arguably nonfrivolous

claim on the merits prevents dismissal of a case on jurisdictional grounds regardless of Circuit

precedent.  Such a reading is simply untenable.  Indeed, *Steel Co.* strongly supports dismissal of

these cases, because it requires Courts to decide jurisdictional issues *before* merits questions, and

requires a court that lacks jurisdiction to dismiss a case forthwith.  If Petitioner's reading of *Steel

Co.* were correct, the myriad jurisdictional statutes found in the United States Code and the

voluminous caselaw on the subject would be meaningless; all that a plaintiff or petitioner would need to do to have a federal court exercise jurisdiction over his or her case would be to state a claim that is not frivolous on its merits.

The unanimous Court in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), explained *Steel Co.* in the following terms:

> In *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), this Court adhered to the rule that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits. *Steel Co* rejected a doctrine, once approved by several Courts of Appeals, that allowed federal tribunals to pretermit jurisdictional objections "where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." Id., at 93, . Recalling "a long and venerable line of our cases," *id*., at 94, *Steel Co.* reiterated: "The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception,'" *id*., at 94-95 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)); for "[ j]urisdiction is power to declare the law," and "'[w]ithout jurisdiction the court cannot proceed at all in any cause,'" 523 U.S., at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

526 U.S. at 577. Under that long-standing rule, this Court simply lacks the authority to do anything other than to consider its jurisdiction, and then, in accordance with binding circuit precedent, to dismiss these cases.

## II. THE EXISTENCE OF DTA REMEDIES DOES NOT UNDERMINE THE CONTROLLING NATURE OF *BOUMEDIENE*

Some petitioners contend that that *Boumediene* does not control any case in which the petitioner is pursuing a DTA petition in the Court of Appeals. That argument is wholly without merit. The Court of Appeals held in *Boumediene* that Section 7 of the MCA eliminates federal court jurisdiction over habeas petitions filed by the detainees at Guantanamo Bay. See 476 F.3d at 986, 994; *see also Boumediene*, 476 F. 3d at 992 (holding that an alien "without property or presence in this country has no constitutional rights, under the due process clause or otherwise"

-4-

), and referred to dismissal of the habeas cases and vacatur of the district court opinions "as the only recourse." 476 F.3d at 994. The proposition that *Boumediene* does not control the cases in which petitioners are exhausting their remedies under the DTA is pure fiction. In denying certiorari, the Supreme Court declined to review the Court of Appeals decision in *Boumediene*, including that Court's conclusion that Section 7 of the MCA requires dismissal of the detainees' habeas cases.[1] Thus, petitioners have no right to pursue their habeas cases, even after they have pursued their remedies under the DTA.

Nor can this Court find a basis in *Rhines v. Weber*, 544 U.S. 269 (2005), to conclude it has discretion to stay the habeas cases pending exhaustion of DTA remedies. Filing a DTA petition is not merely an exhaustion requirement for these habeas cases, but is the only jurisdictionally proper action that can presently be pursued by petitioners. In contrast, in *Rhines*, the habeas petitioner would have been able to pursue his habeas action in federal court, after exhaustion of remedies in state court, so long as the federal statute of limitations had not run. 544 U.S. at 272-73. The Court held that, in those circumstances, no statute barred the district court from staying petitioner's federal habeas action so that it could be pursued post-exhaustion. *See Rhines*, 544 U.S. at 276 (noting that federal courts' authority to enter stays in habeas-related matters is constrained by applicable statutes).

Here, pursuant to statute, the courts lack jurisdiction over these habeas cases. Accordingly, there is no reason to maintain the cases pending exhaustion of DTA remedies. As

---

[1] Moreover, given that the Supreme Court declined to review the *Boumediene* decision, the statement of Justices Kennedy and Stevens accompanying the denial of certiorari cannot plausibly be read, as some petitioners suggest, to mean that they would interpret dismissal of the underlying habeas actions as an "additional step[]" that "prejudice[s] the position of the petitioners." 127 S. Ct. 1478.

the Court of Appeals has acknowledged, dismissal of the habeas cases is the "only recourse."

*Boumediene*, 476 F.3d at 994.  Thus, there is nothing for the district court to do, except dismiss

the cases.  *See Paracha v. Bush*, No. 05-5194, et al. (D.C. Cir. Order of Apr. 9, 2007) (attached

as Exhibit E to Resps' Mot. to Dismiss) (remanding to the district court with instruction to

dismiss the habeas petitions for lack of jurisdiction).

**III.   TRANSFER PURSUANT TO 28 U.S.C. § 1631 IS NOT AVAILABLE BECAUSE
THERE IS NO NEED FOR SUCH A TRANSFER AND THE COURT OF
APPEALS WOULD NOT HAVE HAD JURISDICTION OVER A HABEAS
CORPUS ACTION**

Nor is transfer of these matters from this Court to the Court of Appeals for this Circuit

pursuant to 28 U.S.C. § 1631 available in these cases.  The relevant statute provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or
> an appeal, including a petition for review of administrative action, is noticed for or filed
> with such a court and that court finds that there is a want of jurisdiction, the court shall, if
> it is in the interest of justice, transfer such action or appeal to any other such court in
> which the action or appeal could have been brought at the time it was filed or noticed,
> and the action or appeal shall proceed as if it had been filed in or noticed for the court to
> which it is transferred on the date upon which it was actually filed in or noticed for the
> court from which it is transferred.

28 U.S.C. § 1631.

"There are three elements to a section 1631 transfer: (1) there must be a lack of

jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the

transfer can be made only to a court in which the action could have been brought at the time it

was filed or noticed."  *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992)

(citations omitted).  To be sure, the "lack of jurisdiction" prong is satisfied in these cases.  But

the second and third elements are not at all satisfied.

The interest of justice would be disserved by transfer in this case.  Anyone who can file a

petition under the DTA – as the petitioners in the various Guantanamo Bay habeas cases can readily do, as evidenced not only by the provisions of the DTA itself, but also by the fact that dozens have now done so or announced their intention to do so soon – has no need to have his district court case transferred to the D.C. Circuit.  No legitimate purpose would be served by a transfer.  *See, e.g., Esposito v. Comm'r*, 208 F. Supp. 2d 44, 46 (D.D.C. 2002) (holding that transfer would not serve the interest of justice because the plaintiff had already filed an appeal in the proper forum); *In re Dep't of Energy Stripper Well Litig.*, 206 F.3d 1345, 1354 (10th Cir. 2000) (holding that transfer was not in the interest of justice because the plaintiff states had had "ample opportunity to pursue [their] cases in the proper forum" but had consciously chosen to pursue their cases in the Tenth Circuit).

The third requirement for § 1631 transfer, which demands that the transferee court be a "court in which the action or appeal could have been brought at the time it was filed," 28 U.S.C. § 1631, is also not met.  The Court of Appeals has not had, and does not have, jurisdiction to consider petitions for writs of habeas corpus.  See 28 U.S.C. § 2241(a) (authorizing consideration of applications for habeas corpus by individual circuit judges, but not by courts of appeals); 28 U.S.C. § 2241(e)(1) (as amended by the MCA) (no court may consider application for habeas corpus by alien detained as enemy combatant).  Thus, the petitioners' habeas corpus actions could not have been brought in the Court of Appeals at the time they were filed or at any time thereafter, and a transfer would not serve the purpose behind § 1631, which is to aid litigants who were simply "confused about the proper forum for review," *Am. Beef Packers, Inc., v. Interstate Commerce Comm'n*, 711 F.2d 388, 390 (D.C. Cir. 1983).

Nor would a transfer that would preserve current District Court orders authorizing

counsel access be appropriate.  Such a transfer would conflict with § 1631 and amount to an improper continued exercise of jurisdiction by this Court. Even in cases where § 1631 transfer is available, the terms of § 1631 provide that a transferred case "shall proceed [in the transferee court] as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631.  That means that if transfer were authorized under § 1631, further proceedings in the Court of Appeals would be governed by procedures appropriate to review in the Court of Appeals, not by the procedures that were imposed by this Court for the purposes of habeas corpus litigation.  The Court of Appeals must establish its own procedures, based on the procedural rights that Congress provided to detainees in the DTA and appropriate to the nature of the Court of Appeals' review under the DTA.  *See* Mot. to Dismiss at 9–11.

When the D.C. Circuit faced the question of whether to convert the appeals in *Boumediene* into DTA cases, it instead considered itself constrained to dismiss the cases for lack of jurisdiction.  *See Boumediene*, 476 F.3d at 994.  Now that it is clear that the District Court lacks jurisdiction, dismissal – not transfer – is the only appropriate action.  *See Steel Co.*, 523 U.S. at 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869))).

## IV.    THE COURT SHOULD REJECT PETITIONERS' REQUEST THAT THESE CASES BE MAINTAINED FOR THE PURPOSE OF THE COURT CONTINUING TO EXERCISE JURISDICTION REGARDING COUNSEL ACCESS AND ADVANCE NOTICE OF TRANSFER

Many of the Petitioners also want the Court to maintain these habeas cases on the theory that this would allow the Court to continue to exercise jurisdiction regarding counsel access and

other matters.  They contend that this Court has authority to preserve those orders to protect the status quo, pending a determination as to the Court's jurisdiction over the habeas petitions.  They are not correct either as to the nature of the Court's authority in this regard or as to whether their theory would justify denial of respondents' Motion to Dismiss.

As has been explained, the Court of Appeals has already determined that federal courts lack jurisdiction over petitioners' habeas cases, see 476 F.3d at 986, 994, and the Supreme Court has declined to review that ruling, see 127 S. Ct. 1478.  Accordingly, this Court cannot adopt the convoluted logic under which it would have the authority to exercise jurisdiction for the purpose of entering or maintaining its orders.  Neither *United States v. United Mine Workers*, 330 U.S. 258 (1947), on which many of the petitioners rely, nor any other authority supports such logic. *See United Mine Workers*, 330 U.S. at 291 ("*Until its judgment declining jurisdiction* should be announced, [the court of appeals] had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition[.]") (emphasis added).

Petitioners cannot effectively claim that their habeas actions  must be maintained until this Court has answered all the questions about DTA proceedings and the scope of its review in order to preserve potential remedies before this Court and on appeal.  Even if questions remained as to the scope of proceedings under the DTA, that would provide no basis to maintain habeas cases so the Court could exercise jurisdiction that it lacks.  The Court of Appeals, in proceeding with the DTA cases, will answer those questions as necessary.  If petitioners obtain adverse rulings in their DTA cases, the remedy will be to seek review in the Supreme Court, not to resurrect the district court habeas cases.

In particular, petitioners ask that the protective order entered in many of these cases

remain in place to ensure counsel access.[2]  To the extent that an issue such as counsel access or any other appropriate matter is to be addressed, it must be addressed in the Court of Appeals in the context of properly filed DTA petitions for review of CSRT determinations.  The Court of Appeals must establish its own procedures, based on any procedural rights that Congress provided to detainees in the DTA and appropriate to the nature of the Court of Appeals' review under the DTA.  *Cf. Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."); id. at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).  Indeed, issues relating to the scope and terms of an appropriate protective order and counsel access regime already are being addressed in the Court of Appeals in two pending DTA petition cases, *Bismullah v. Gates*, No. 06-1197 (D.C. Cir), and *Parhat v. Gates*, No. 06-1397 (D.C. Cir), with oral argument scheduled for May 15, 2007.[3]   In any event,

---

[2] The fact that certain elements of the Protective Order will survive dismissal of these cases does not support petitioners' position in this regard.  Portions of the Protective Order detail how classified and protected information will be handled after termination of the case.  The obligations accepted by petitioners' counsel by signing the Protective Order survive under the terms of that Order, regardless of why the case is ultimately dismissed.  The vitality of those portions of the Protective Order has no bearing on whether this Court retains jurisdiction in light of the *Boumediene* decision.

[3] In light of the Court of Appeals' upcoming consideration of various preliminary issues in the DTA litigation, continuation of the district court counsel access regime is not only unnecessary, but such action has the potential to create significant problems of concurrent and conflicting obligations on the parties.  In the interests of clarity and comity, the Court should not maintain the district court counsel access regime indefinitely during the pendency of DTA litigation.  Instead, the Court should allow the Court of Appeals to establish its own procedures

(continued...)

petitioners and their counsel may maintain continued access by filing a DTA petition and
agreeing to an interim counsel access regime without prejudice to whatever right petitioners have
to seek a different regime in the Court of Appeals.  *See* Mot. to Dismiss at 10-11.

Further, it is neither necessary nor appropriate that the Court maintain these habeas cases
in order to preserve or maintain orders issued in some of the cases that prohibit respondents from
transferring petitioners from Guantanamo Bay to another country without thirty days' advance
notice to the Court and counsel.  As respondents have demonstrated in numerous filings in this
Court, in any transfer of a Guantanamo detainee, a key concern is whether the receiving
government will treat the detainee humanely and in a manner consistent with its international
obligations; specifically, it is the policy of the United States not to repatriate or transfer a
detainee to a country where the United States believes it is more likely than not that the
individual will be tortured.  *See, e.g., Al Darbi v. Bush*, Civ. No. 05-2371 (RCL) Resps' Mem. in
Opp. to Pets' Mot. for Prelim. Inj. Requiring Advance Notice of Any Transfer or Removal at 7-9
(Dkt. no. 26) (filing including description of policy of not transferring person to a country when
the United States believes it would be more likely than not the person would be tortured).

In addition, as has been explained, the District Court is without jurisdiction in this matter
and, specifically, with respect to issues relating to detainee transfers.  As recognized in
*Boumediene*, Section 7 of the MCA eliminates jurisdiction not only over habeas actions, but also
over all cases "'which relate to any aspect of the detention, transfer, treatment, trial, or
conditions of detention of an alien detained by the United States since September 11, 2001.'"

---

[3](...continued)
based on any procedural rights that Congress provided to detainees in the DTA.

*See* 476 F.3d at 986-87.  Thus, the MCA expressly bars claims relating to any transfer of a

petitioner.  Indeed, the Court of Appeals recently dismissed for want of jurisdiction Guantanamo

detainee cases involving advance notice of transfer orders, see Judgment filed Mar. 22, 2007 in

*Kiyemba v. Bush*, Nos. 05-5487, et al. (D.C. Cir.) (attached as Exhibit D to Resps' Mot. to

Dismiss), as well as a case in which a detainee sought to enjoin his proposed transfer from

Guantanamo Bay, *see Zalita v. Bush*, No. 07-5129 (D.C. Cir. Order of Apr. 25, 2007); S. Ct.

Order of May 1, 2007 (denying motion for injunctive relief)).[4]

## V.    SPECULATION REGARDING POSSIBLE COLLATERAL CONSEQUENCES RELATED TO A DETERMINATION OF ENEMY COMBATANT STATUS DOES NOT GIVE RISE TO COURT JURISDICTION OR UNDERMINE THE PROPOSITION THAT THIS CASE IS MOOT

As set forth in our prior filings and above, these cases must be dismissed because

jurisdiction is precluded under the MCA.  *See supra, passim*; Resps' Mot. to Dismiss at 13-14.

With respect to those petitioners who have been released from United States custody, there is

another reason for dismissal: they could not have pursued their habeas claims because their

release would have rendered their claims moot.

As explained in respondents' motion to dismiss (Mot. to Dismiss at 11-13), release from

United States custody generally resolves the controversy raised by a habeas petition and renders

the case moot, because "the traditional function of the writ [of habeas corpus] is to secure release

from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "[F]or a court to

exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must

demonstrate that . . . his subsequent release has not rendered the petition moot, i.e., that he

---

[4] Copies of these orders are attached as Exhibit G.

continues to present a case or controversy under Article III, § 2 of the Constitution." *Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (quoting *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (alteration in original)). A petitioner therefore bears the burden of showing that the case or controversy underlying the habeas petition persists because he continues to face collateral consequences directly related to his detention. *See Idema v. Rice*, 2007 WL 841391 at *2 (D.D.C. 2007) (citing cases). Hence, in *Qassim v. Bush*, the D.C. Circuit dismissed appeals brought by several former Guantanamo detainees from a district court's decision denying their habeas petitions, finding that the petitioners' release rendered their appeals moot. 466 F.3d at 1078.

    In these cases, the mere fact that a petitioner was designated as an enemy combatant does not mean there is a live controversy. The Court cannot simply presume that adverse consequences sufficient to avoid mootness will flow from the enemy combatant designation; it is well-settled that it would be improper to make such an assumption. *See Spencer v. Kemna*, 523 U.S. 1, 7–14 (1998) (declining to presume adverse collateral consequences from revocation of parole); *Lane v. Williams*, 455 U.S. 624, 631–33 (1982) (declining to presume adverse collateral consequences from determinations that the respondents had violated parole).

    Released petitioners have not demonstrated that they will suffer adverse consequences as a result of their enemy combatant designations. Moreover, repercussions that are not concrete, but merely conjectural or speculative, or even repercussions that are present or imminent but that result from the independent judgments of third parties—such as claimed stigma or actions taken by a foreign government—do not establish a case or controversy in a habeas corpus action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (constitutional standing requires

-13-

concrete, particularized injury that is actual or imminent and not conjectural or speculative); *id.* at 562 (when the issue of justiciability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury"); *Greater Tampa Chamber of Commerce v. Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980) (holding that a challenge against an executive agreement was not a justiciable case or controversy in part because redress of the plaintiffs' alleged injuries would depend on the independent response of the United Kingdom). An enemy combatant designation is not a criminal conviction; the identification and detention of enemy combatants is a preventive measure taken "to prevent captured individuals from returning to the field of battle and taking up arms once again." *See Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion). Thus, the designation does not constitute concrete, particularized, and non-hypothetical injury sufficient to save habeas claims from mootness.

Accordingly, in *Idema v. Rice*, 2007 WL 841391 (D.D.C. 2007), this Court found that damage to a petitioner's professional reputation and denial of parental visitation rights did not amount to collateral consequences that would allow the petitioner to continue to pursue a habeas corpus action challenging his alleged unlawful detention in Afghanistan. *Id.* at *3–*4. The Court found that the alleged adverse consequences, however serious, did not prevent the habeas action from becoming moot, because they were "based on the discretionary decisions of employers or judges and [were] not legally prescribed consequences of incarceration" that were "imposed by state or federal law." *Id.* at *3. The Court further observed that a grant of habeas

-14-

corpus relief would not necessarily affect the decisions of employers, family court judges, or foreign authorities. *Id.* at *3.

Consequently, not only are these actions jurisdictionally improper under the MCA, they are moot as to released detainees, and should be dismissed.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court dismiss petitioners' habeas cases for lack of jurisdiction.

Dated: May 14, 2007                        Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel


  /s/ *Judry L. Subar*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar 347518)
TERRY M. HENRY
JEAN LIN
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
NICHOLAS A. OLDHAM
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470
Attorneys for Respondents